**PASSUMPSIC SAVINGS BANK v. JOHNSON et al.**

No. 7156—Opinion Filed March 6, 1917.

Rehearing Denied May 29, 1917.

(165 Pac. 181.)

(Syllabus by the Court.)

1. **Mortgages—Construction of Contract—Time as Essence — Sufficiency of Evidence.**

The P. Bank sued J. and wife on a promissory note for $1,500, a past-due interest coupon for $45, and to recover $200 attorney's fee, as provided for in the mortgage, and prayed that the same be foreclosed. The petition alleged that W., D., M., McM., P., and the A. Bank claimed some interest in the land adverse and inferior to that of plaintiff, and also prayed that they be made parties defendant and required to set it up. W. answered that he had purchased the land subject to the mortgage, and pleaded and proved a contract in which (after reciting that there was $269.55 delinquent interest due on the indebtedness, that said interest coupon would be due on the $1,500 note July 1, 1913, and that W. was interested in the payment of said indebtedness) it was agreed by and between W. and plaintiff, in consideration of a present settlement of all controversies in connection with the loan, that W. would pay plaintiff cash in hand said sum of $269.55 (which he did), and also "on or before June 25, 1913, as full principal and

interest then accrued on the loan, $1,447.50, time being of the essence of this contract"; that, if said sum was not paid plaintiff on or before said date, then plaintiff should be entitled to judgment in foreclosure of the mortgage for $1,545, with interest from July 1, 1913, and that W. would interpose no defense to the action; that plaintiff would surrender to W. said evidences of indebtedness duly canceled, and receive the $1,447.50 on or before said date; and that, in case of default in the payment at the time specified, plaintiff would be entitled to judgment for the full amount of said note and coupon and foreclose the mortgage according to its terms. W. defaulted in the payment, but on July 12, 1913, and again on July 30, 1913, and again on August 2, 1913, tendered plaintiff $1,447.50, each time with interest from June 25, 1913. There was judgment for plaintiff for $1,446.78, the sum last tendered. Held, that time was of the essence of the contract; that plaintiff was entitled to recover $1,500 on the note sued, also $45 on the past-due interest coupon thereto attached, together with interest thereon at 10 per cent. per annum from July 1, 1913, also $200 as an attorney's fee, as provided in the mortgage, with interest thereon at 6 per cent. per annum from the date of the suit, and that the judgment was contrary to the evidence.

2. **Appeal and Error—Proceeding in Error —Petition — Parties — Dismissal — Mortgage Foreclosure.**

By way of cross-petition W. further alleged that the mortgaged lands were theretofore allotted to one S. B., a duly enrolled citizen of the Choctaw Nation by blood, who died November 10, 1904, after selecting his allotment, leaving him surviving as his only heirs at law his widow, K., and J. and S., his minor children, who sold and conveyed the land to Mrs. Pitt, and she to the defendant J., and he to W.; that the sale was good, and passed the title, but that the B.'s were asserting title thereto on the ground that the county court was without jurisdiction to appoint a guardian to make the sale for said minors; and that the three B.'s were necessary parties to the suit and asked that they be brought in. And such was done, whereupon they answered and set up title to the land, and by way of cross-petition asked that their title thereto be cleared of all conveyances including the mortgage sought to be foreclosed. No issue was joined between plaintiff and the three B.'s. There was judgment for W. against them as prayed, and that they take nothing on their cross-petition. Held, that they were not necessary parties to the proceeding in error to reverse the judgment foreclosing the mortgage, and that a failure to make them parties thereto was not a ground for a dismissal of said proceeding.

3. **Same.**

Further, by way of cross-petition, W. also alleged that subsequent to the date of the

mortgage sought to be foreclosed he and the defendant D. were sureties for one Williams, who then owned the land, on a promissory note for $1,700, payable to the defendant A. bank, secured by a mortgage thereon; that later they became his sureties on another note to said bank for $2,290, which was secured by another mortgage to the bank executed by W.'s wife, who then owned the land; that both mortgages were junior to another mortgage on the land Williams owed Bowman for $210; that thereafter Williams caused the land to be conveyed to him and D. in consideration that they pay off all of said indebtedness, which they did, to the bank only, by executing their note for $4,000 and paying the balance in cash and delivering the notes to Williams; that thereafter Bowman foreclosed his mortgage and sold the land to the defendant M., who quitclaimed the same to W. for value, who offered to convey one-half thereof to D., in consideration that he pay one-half the purchase money paid M., which he refused to do. The A. bank answered, and D. defaulted, whereupon there was judgment against him and in favor of the bank for $2,261.48, together with attorney's fees and costs, and he was perpetually enjoined from asserting any claim to the land. Held, that neither the bank nor D. was a necessary party to the proceeding in error to review the judgment in favor of plaintiff, the P. bank, against W. foreclosing its mortgage.

### 4. Same.

After the decree in foreclosure was rendered and entered, on the overruling of the motion for a new trial, the same was modified, pursuant to which the defendant W. paid plaintiff $1,462.78 and executed a bond to respond in lieu of the land for any additional sum plaintiff might recover against him on the mortgage indebtedness. Held, that as no deficiency judgment was asked, and could not be recovered against the mortgagors J. and wife, they were not necessary parties to the proceeding in error to review said decree.

### 5. Same.

Where, in a suit to foreclose a mortgage, M., McM., and P. were allowed to claim some interest in the land adverse, but inferior, to that of plaintiff, M. appeared and disclaimed, and the other two were not summoned, nor did they appear, and no judgment was taken for or against them, all, seemingly, having passed out of the case, held, that a failure to make them parties to the proceeding in error is not a ground for dismissal.

Error from District Court, Atoka County; Robert M. Rainey, Judge.

Suit by the Passumpsic Savings Bank against G. C. Johnson and Jazie Johnson on a note and to foreclose a realty mortgage in which James E. Whitehead, J. Kirby Dobbs, T. F. Memminger, Pete McMillan, R. T. Pennington, and the American National Bank of McAlester were made parties defendant, and in which Memminger disclaimed, and Whitehead answered and filed a cross-petition to quiet title, asking that Dobbs, Memminger and Katie Benjamin, and James and Sampson Benjamin, minors by their guardian, be brought in, and in which they filed answer and cross-petition, upon which Whitehead joined issue. Judgment by default against Pennington and McMillan, and default judgment for the American National Bank against Dobbs, and judgment against the Benjamins, enjoining those parties, with default judgment for plaintiff bank against the Johnsons, with an order of sale. The bank's motion for a new trial was denied, and it brings error. Reversed and remanded.

Charles B. Mitchell and H. A. Kroeger, for plaintiff in error.

James E. Whitehead, for defendants in error.

TURNER, J. On August 6, 1913, Passumpsic Savings Bank, plaintiff in error, in the district court of Atoka county, sued G. C. Johnson and Jazie Johnson on a past-due promissory note, dated January 14, 1909, for $1,500, payable to the Deming Investment Company, and by said company indorsed to plaintiff for value and before maturity, also on a past-due interest coupon thereto attached for $45, and to foreclose a real estate mortgage on certain lands described to secure the payment thereof. As the mortgage provides for an attorney's fee of $200 in case of foreclosure, plaintiff prayed, not only judgment for $1,545, the amount of the note and coupon, together with interest thereon at 10 per cent. per annum from July 1, 1913, but judgment for $200 as an attorney's fee and interest thereon at 6 per cent. per annum from the date of suit and for costs.

James E. Whitehead, J. Kirby Dobbs, T. F. Memminger, Pete McMillan, R. T. Pennington, and the American National Bank of McAlester were alleged in the petition to claim some interest in the land adverse, but inferior, to that of plaintiff, the nature and extent of which was alleged to be unknown, and for that reason were made parties defendant and asked to set it up. For answer, Memminger disclaimed and passed out of the case. After demurrer filed and overruled, Whitehead answered, making a general denial. After that, for separate amended answer and cross-petition, he in effect alleged himself to be the owner of the land subject to the mortgage; that, as such, on April 9, 1913, he entered into a contract in writing with Deming Investment Company, agent for

plaintiff, which, after reciting the fact of the mortgage in question and that there was $269.55 delinquent interest due thereon, reads:

"Whereas, an interest coupon of forty-five dollars ($45) on said principal note of fifteen hundred dollars ($1,500) will fall due July 1, 1913, no part of which is included in the said sum of two hundred sixty-nine and 55/100 dollars; and whereas, said party of the first part is interested in the title to said land and the payment of said mortgage indebtedness;

"Now, in consideration of a present settlement of all controversy in connection with said loan, and by way of compromise to obtain such present settlement, said first party hereby agrees to pay to said second party, on signing of this agreement, said delinquent interest in the sum of two hundred sixty-nine and 55/100 dollars ($269.55), and to pay to said second party, on or before June 25, 1913, as full payment of the principal and interest then accrued on said loan, the sum of fourteen hundred forty-seven and 55/100 dollars ($1,447.50) time being of the essence of this contract, and if said sum of fourteen hundred forty-seven and 50/100 ($1,447.50) shall not be paid to the Deming Investment Company, agent as aforesaid, on or before June 25, 1913, then said first party hereby agrees that said Passumpsic Savings Bank shall be entitled to judgment in foreclosure action for the full sum of fifteen hundred and forty-five dollars ($1,545), with interest at ten per cent. per annum from July 1, 1913, together with all unpaid taxes, and said first party agrees that he will not interpose any defense of any nature whatsoever, in such foreclosure action. And for said consideration, said second party agrees to deliver to first party the interest coupons duly canceled, and to surrender the tax sale certificate aforesaid to the county treasurer to be canceled, and by way of compromise to receive said sum of fourteen hundred forty-seven and 50/100 dollars ($1,447.50) on or before June 25, 1913, and to deliver to said first party the canceled principal note of fifteen hundred dollars ($1,500), and canceled coupon of forty-five dollars ($45), due July 1, 1913, and duly acknowledged release of said mortgage, time being of the essence of this, agreement. And it is mutually agreed, between the parties to this agreement, that in case default is made in the payment of said sums above mentioned, or any part thereof, at the time specified, said Passumpsic Savings Bank shall be entitled to judgment for the full amount of said note and coupon and foreclosure of said mortgage according to the original terms thereof.

"In witness whereof, said first party has hereunto subscribed his name, and said second party has caused its corporate name to be hereunto subscribed by its proper officers

and its corporate seal attached, this the day and year first above written.

"[Signed] James E. Whitehead.

"The Deming Investment Company.
"By D. S. Waskey, Vice Pres.
"Witnesses:
"John B. Snell.
"Hattie L. Hackney.
"Attest:
"F. W. Stout, Secretary. [Seal.]"

And, in effect, that on July 12, 1913, and again on July 30, 1913, and yet again on August 2, 1913, pursuant thereto, he tendered the amount of money called for therein, to wit, $1,447.50, and interest, or $1,462.78, to the Deming Investment Company, which was refused, and which, he says, is all plaintiff is entitled to recover in the cause. By way of cross-petition he in effect alleged that the mortgaged lands were theretofore allotted to one Simon Benjamin, a duly enrolled citizen of the Choctaw Nation by blood; that he died November 10, 1904, after selecting his allotment, leaving him surviving as his only heirs at law Katie, his widow, and James and Sampson Benjamin, his minor children; that they sold and conveyed the land to Maggie Pitt, and she to the defendant G. C. Johnson, and he to defendant; that said sale was good and passed the title from the Benjamins, but nevertheless they were asserting title to the land adverse to plaintiff on the ground that the county court of Atoka county was without jurisdiction to appoint the guardian making the sale for said minors, and hence said sale was void; that the three Benjamins were necessary parties to the suit; and prayed that they be summoned to appear as such and answer and that his title as to them be quieted. The answer further alleged that on December 6, 1909, defendant, together with one Dobbs, was surety for one Williams on a promissory note for $1,750, payable to the American National Bank of McAlester, which was secured by a mortgage on the land in question; that said mortgage was inferior to another mortgage given by said defendants Johnson to one Bowman for $210, dated January 14, 1909; that on February 18, 1911, he and said Dobbs became sureties to said Williams on another note for $2,290, payable to said bank, and his wife, Ellen, being then the owner of the land, executed to said bank a mortgage on said land to secure said note of $2,290, the same being inferior to said mortgage of $1,750 executed to the bank, and also to the $210 mortgage given to said Bowman by the Johnsons; that, after executing said mortgage to the bank, Williams became insolvent and unable to pay the mortgage to the bank or to Bowman, and on March 23, 1912, caused

the land to be conveyed to defendant and Dobbs, in consideration that they pay off the note of $210 to Bowman and the notes of $1,750 and $2,290 to the bank, which they did, so far as the bank was concerned, by executing their note for $4,000 to the bank and paying the balance to the bank in cash, whereupon his said notes were delivered to Williams; that thereafter Bowman foreclosed his mortgage for $210, and recovered in said suit an attorney's fee of $50, together with costs, amounting to $52.93, and a decree of foreclosure was entered, and the lands herein were sold to one Memminger, to satisfy the same, and the sale was confirmed, and a deed to the lands issued to Memminger, which was duly recorded, "thereupon barring all right of said bank to the land." He alleges that all the right and title in and to the lands by virtue of its mortgage aforesaid were held by the bank for the benefit of himself and Dobbs, and were lost by the refusal of Dobbs to furnish one-half of the money to pay the Bowman mortgage; that thereafter defendant bought the land back from Memminger for $913.63 for his own benefit, and not for the benefit of Dobbs, and so notified him; that Memminger quitclaimed the lands to defendants, who thereafter offered to convey to Dobbs one-half the land in consideration that he pay one-half of what defendant had paid for the land, but that he refused to pay same, ever since which said time defendant has been in peaceful possession as the owner thereof. He further alleges that, notwithstanding all of which, said Dobbs was asserting title thereto in virtue of the deed executed March 23, 1912, by Williams and wife, as aforesaid, and was also contending that defendant repurchased the land from Memminger for his benefit, and that he is entitled to one-half thereof, and is not liable to pay any part of the $4,000 note they executed to the bank. Wherefore he prayed that plaintiff take nothing; that the Benjamins, Memminger, and Dobbs be brought in to litigate their rights, if any they have, in the lands; that an account be stated between him and Dobbs; and that, in effect, his title to the land be quieted.

On January 15, 1914, plaintiff replied, admitting the execution of the contract, but denying all other allegations in the answer and cross-petition of the defendant Whitehead. After guardian ad litem had been appointed for the two Sampson minors, they, by answer and cross-petition, asserted title to the land as heirs of their father, as alleged, set forth the proceedings of the probate court of Atoka county, and assailed them as void for certain reasons, and prayed that their title to the land be cleared of their guardian's deed to Maggie Pitt, and her deed to the Johnsons,

and the mortgage to the Deming Investment Company, sought herein to be foreclosed, and for general relief. The mother adopted their answer. Whitehead joined issue with them by reply, in effect a general denial. Pennington and McMillan also made default, and judgment was entered against them accordingly. Upon the issues thus joined there was trial to the court, who, on February 16, 1914, rendered, and on June 1, 1914, entered, judgment in favor of American National Bank (whose answer is not in the record) against Dobbs by default for $2,261.56, in favor of the bank, together with $226.15 attorney's fees and all costs by the bank therein expended, and perpetually enjoined Dobbs from claiming any interest in or title to the land and from making demand "against the defendant Whitehead [therefor?] or any sum of money by reason of any of the above transactions." At the same time he also rendered and entered judgment that the Benjamins take nothing by their suit, and perpetually enjoined them from asserting any title to the land, or attempting to convey any, or doing anything to "dispute" the title of Whitehead thereto. On June 1, 1914, he also, as shown by a separate judgment entry, rendered and entered judgment in favor of plaintiff, Passumpsic Savings Bank, against the defendant mortgagors, G. C. and Jazie Johnson, by default for $1,462.78 only, declared the same a lien upon the land, ordered it sold to satisfy the same, in case said sum was not paid in a certain time by the Johnsons or Whitehead, and gave judgment that Whitehead recover "all his costs herein expended from the plaintiff, Passumpsic Savings Bank, and the other defendants." After motion for a new trial filed by said bank only, and overruled September 4, 1914, the bank brings the case here, without making any of the defendants, save the Johnsons and Whitehead, parties defendant in error.

In the order overruling the motion for a new trial the judgment previously rendered was modified, so as to require Whitehead within 20 days to pay to the clerk of the court for the use of plaintiff $1,462.78, the amount tendered and alleged by Whitehead to be due on the mortgage. He was further ordered to give a bond in the penal sum of $750, conditioned that, if plaintiff appealed the case and, pursuant to the final order of this court, recovered against the mortgaged property a greater sum than that amount, the bond should stand as full surety for the amount so recovered, in lieu of the mortgage, and that said bond should be void in the event said mortgage was not released in 20 days after the approval of the bond. It was further ordered that plaintiff be paid said sum of $1,462.78 so paid into court within

10 days after it was paid in, upon depositing with the clerk said release, and that the payment and acceptance thereof and said release should in no wise prejudice plaintiff's right of appeal, and a recovery of a larger amount than the judgment, all of which was done.

It is contended that this appeal should be dismissed, because Memminger, McMillan, Pennington, Dobbs, the American National Bank, and the three Benjamins were not made parties to this appeal. There is no merit in this contention as to the three first named, for the reason that Memminger disclaimed and passed out of the case and the two others were neither summoned nor appeared, and no judgment was rendered for or against them. In note 5, 2 R. C. L. 68, it is said:

"Where, in a suit to foreclose a mortgage, certain persons were made defendants under a general allegation that they claimed to own or hold some right, title, or interest in the real estate, but there was no judgment for or against them, they seemingly having droppd out of the case, it was held that the failure to make them parties to the proceeding in error was not a ground for a dismissal." State ex rel. Hankins, Co. Atty., v. Holt, 34 Okla. 314, 125 Pac. 460.

And, although Dobbs and the American National Bank were alleged by plaintiff to have some interest in the case, and were summoned, they were also, in effect, dropped from the suit by plaintiff, as it took no judgment against them. To be sure, on Whitehead's cross-petition against them, it was adjudged that Dobbs owed said bank in a sum certain and had no interest in the land in question as against Whitehead; but, as that judgment had nothing to do with the judgment in favor of plaintiff, rendered on the foreclosure of its mortgage, in effect, that Whitehead owed plaintiff only $1,462.78 in settlement of the mortgage debt, as he contended, instead of $1,745, as plaintiff contended, we cannot see how a reversal of the latter judgment could possibly affect the judgment adjusting the rights aforesaid between the bank, Dobbs, and Whitehead, and for that reason the bank and Dobbs were not necessary parties to this appeal.

Again, a reversal of the former judgment could not affect the question of what was due and owing plaintiff on the mortgage, for the reason that the bond executed subsequent to judgment now stands in place of the land, which no longer can be held to respond in execution for the debt, and hence we see no reason why plaintiff's appeal cannot be separately prosecuted without affecting any further litigation that might be waged by others concerning it. And besides, as all this litigation between Whitehead and the bank and Dobbs arose out of rights alleged to have accrued since the execution of plaintiff's mortgage and inferior to it, the bank and Dobbs were not necessary parties to its foreclosure in the trial court, and hence not necessary parties in this court. Neither were the Benjamins necessary parties to its foreclosure. Nor were they brought in by plaintiff, but by Whitehead by cross-petition, and as their claims to the land were not properly triable in that suit, but should have been tried in an independent action, it follows that the judgment secured against them by Whitehead, and the judgment in favor of plaintiff against Whitehead's grantors, were several and not joint judgments, and for that reason they are not necessary parties to this appeal.

In support of the motion to dismiss, it is further urged that the case-made was not served upon G. C. and Jazie Johnson, within the proper time. Assuming such to be the state of the record, as no deficiency judgment was asked against them as mortgagors, they are not necessary parties defendant in error. Page v. Turk, 43 Okla. 667, 143 Pac. 1047. It follows that none of the parties mentioned were necessary parties to this appeal, and, there being no merit in the remaining grounds in the motion to dismiss, the motion to that effect should be overruled.

This sends us to the merits of the case. Upon the face of the agreement of April 9, 1913, plaintiff was entitled to recover, not only the full amount of his promissory note of $1,500, but also upon the past-due interest coupon of $45, and also $200 as an attorney's fee—in all $1,745, as insisted, instead of $1,462.78, as found by the trial court. There is no ambiguity in the contract. When Whitehead, pursuant thereto, paid $296.55, and agreed to further pay plaintiff, "on or before June 25, 1913, as full payment of the principal and interest then accrued on said loan, the sum of fourteen hundred forty-seven and 50/100 dollars ($1,447.50), time being of the essence of this contract, and if said sum of fourteen hundred forty-seven and 50/100 dollars shall not be paid to the Deming Investment Company, agent as aforesaid, on or before June 25, 1913, then the said Passumpsic Savings Bank shall be entitled to judgment in foreclosure action for the full sum of fifteen hundred forty-five dollars ($1,545) with interest thereon from July 1, 1913, * * *" and that he would interpose no defense to the foreclosure action, and plaintiff thereby agreed to deliver the interest coupons duly canceled and surrender, etc., and, by way of compromise of the mortgage indebtedness, receive said sum of $1,447.50 on or before June 25, 1913, and deliver said note and cou-

pon and cancel the mortgage, and both agreed that time was of the essence of the contract, and when Whitehead failed to pay said amount on that day, as agreed, plaintiff was entitled to recover the full amount of the note and coupon sued, together with $200 attorney's fee according to the original terms thereof, and to foreclose the mortgage on the land as prayed.

It will not do to say that to enforce this agreement would be to enforce the payment of a penalty, and hence the court did right in refusing so to do; this for the reason that the note, secured by the mortgage sought to be enforced, was evidence of a subsisting debt to the amount of it, and the agreement valid and enforceable. This was squarely held in Royal Makepeace v. President, etc., College, 10 Pick. (Mass.) 298. There the facts were that the payee in a note for $4,310 agreed with the maker that, if the maker would convey to him certain land the sum of $3,200 should be allowed him as a credit on the note, and that upon receipt of the conveyance of the land and the maker's note for $500, payable in one year, with interest, the first note should be given up. In the agreement was this clause; "The above arrangement is to be carried into effect in three months." The land was conveyed within the time stated and $3,200 indorsed as a credit on the note, but no other payment and no note for $500 was made or tendered within the three months. Under this state of facts it was held:

"That the note was not a penalty to enforce the performance of some other obligation, but that it was evidence of a subsisting debt to the amount of it, and that the agreement was in the nature of a composition, the conditions of which must be strictly complied with, and that the maker had not complied with the conditions of the agreement, and therefore the payee was entitled to recover the balance of the note after deducting the $3,200."

In the body of the opinion the court, speaking through Shaw, C. J., said:

"The object of the plaintiffs was to insure the actual payment of the smaller sum, or, in failure of that, to retain their subsisting and legal claim for the larger; and we can perceive no claim, either in law or equity, on the part of the debtor, to have the benefit of the agreement, without a compliance with the condition upon which it was made. The case is within the reasoning and authority of Tufts v. Kidder, 8 Pick. (Mass.) 537. It is well settled, as well in equity as at law, that a creditor having entered into an agreement for a composition, is not bound to take less than his debt, unless that agreement shall be absolutely and strictly complied with. Mackenzie v. Mackenzie, 16 Ves. 372."

As an accord and satisfaction is defined to be "an agreement between two parties to give and accept something in satisfaction of a right of action which one has against the other, which when performed is a bar to all actions upon this account" (Bouvier's Law Dictionary), the most that can be said of this agreement is that it was an accord, well pleaded, for the reason that thereby the minds of plaintiff and Whitehead met on the proposition that $1,447.50 was to be accepted, if paid on or before June 25, 1913, in full of the mortgage debt. And for the reason that said accord was not executed, by payment and acceptance of the $1,447.50, pursuant to and within the time prescribed in the contract, for time was of the essence of the contract, plaintiff is entitled to recover upon the original cause of action; that is, on the note and mortgage sought to be foreclosed. 1 Am. and Eng. Encyc. of Law, 420, says:

"An accord, in order to discharge a contract or cause of action, must be executed, and this execution of the accord is the satisfaction. Satisfaction consists in the actual performance by one party of the agreement of accord, and the acceptance by the other party of such performance in full satisfaction of the original cause of action or contract."

In Hearn v. Kiehl, 38 Pa. 147, 80 Am. Dec. 472, the court said:

"Accord and satisaction is a good plea by a debtor to the action of his creditor, but the legal notion of accord is a new agreement on a new consideration to discharge the debtor. And it is not enough that there be a clear agreement or accord, and a sufficient consideration, but the accord must be executed. The plea must allege that the matter was accepted in satisfaction. Mere readiness to perform the accord, or a tender of performance, or even a part performance and readiness to perform the rest, will not do. Such is the law between debtor and creditor."

This is in keeping with what we held in Houston Bros. v. Wagner, 28 Okla. 367, 114 Pac. 1106. There certain partners, as Houston Bros., plaintiffs in error, sued one Wagner, defendant in error, on three certain promissory notes. Defendant admitted the execution thereof, and pleaded what was intended as an accord and satisfaction, in that he had offered, and plaintiffs agreed to accept, in full payment of the indebtedness, a deed to certain real estate; that he had placed plaintiffs in possession and tendered them the deed, which they declined to accept; and the deed was brought into court and again tendered plaintiffs. There was judgment for defendant. In reversing the case, in the syllabus we said:

"1. An accord must be completely executed to sustain a plea of accord and satisfaction. A part execution and tender of performance of the residue is insufficient.

"2. Where, in an action on certain promissory notes, defendant pleaded accord and satisfaction, in effect, that pending the action it was agreed between defendant and plaintiff's agent that plaintiff would accept of defendant in full satisfaction of said notes certain lots, whereupon defendant placed him in possession and later tendered a deed therefor, which was refused, and the evidence supported the plea, held, that a judgment for defendant was contrary to law."

And so we say the judgment in question is contrary to law, in that, while the agreement pleaded was a good plea of accord, the undisputed evidence discloses that the $1,447.50, agreed to be paid plaintiff, was not tendered on the date fixed therein, and hence was not accepted in satisfaction thereof, but, time being of the essence of the contract, was rightfully refused. We are therefore of opinion that plaintiff was entitled to recover $1,500 on the note sued, also, on the past-due interest coupon thereto attached for $45, together with interest thereon at 10 per cent. per annum from July 1, 1913, also $200 as an attorney's fee, as stipulated in the mortgage, with interest thereon at 6 per cent. per annum from the date of suit, and for costs, and that the mortgage be foreclosed, and the land sold to satisfy the same, or the bond held to respond.

The cause is accordingly reversed and remanded, to be proceeded with according to the views herein expressed.

All the Justices concur.